## STANDARD PAINT CO. v. BIRD.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

### No. 48.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WATERPROOF ROOFING.
   The Rugen and Abraham patents, No. 775,635 and No. 775,636, respectively for flexible roofing or flooring and a waterproof covering, and processes of manufacturing the same, construed, and *held* valid, but not infringed.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—LIQUID CEMENTING PAINT.
   The Abraham patent, No. 824,898, for a liquid cementing paint, *held* valid, but not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from decrees of the District Court, Southern District of New York, dismissing the bills in two suits for infringement of patent. The first suit charges infringement of patent No. 775,635 (hereinafter called the first patent), issued November 22, 1904, to Louis C. Rugen and Herbert Abraham for flexible roofing or flooring, and also of patent No. 775,636 (hereinafter called the second patent), issued November 22, 1904, to the same patentees for a waterproof covering. The second suit charges infringement of patent No. 824,898 (hereinafter called the third patent), issued January 3, 1906, to Herbert Abraham for liquid cementing paint. The District Court, recognizing the validity of all three patents (the first and second had been so adjudicated), held that defendant's process and liquid paint did not infringe any of them. Upon appeal no question is made as to the correctness of the ruling on the first patent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

The opinion of Judge Mayer in the District Court is as follows:

Two suits in equity for infringement of three letters patent as follows: (1) Suit involving letters patent Nos. 775,635 and 775,636, called "first" and "second" patents; (2) suit involving letters patent No. 824,898, called "third" patent. Both suits come up on a single record.

The three patents relate to producing colored flexible hydrocarbon roofings. The validity of the "first" and "second" patents was sustained by the Circuit Court and the decree affirmed by the Circuit Court of Appeals on the opinion below. (C. C.) 175 Fed. 346; 182 Fed. 1023, 104 C. C. A. 669. Judge Ray's opinion so fully describes the inventions that repetition here is unnecessary.

The "First" Patent. The defendant argues that the leading feature of the invention is the thorough union with a hydrocarbon roofing or other foundation of a thick colored facing by the application of the facing to the foundation in the presence of heat, so as to cause the two to fuse together or "interlock," thereby contrasting their process with the ordinary painting process, by which a thin film of paint is applied cold in the form of a liquid. "The real gist of the invention," complainant claims, "lay in the discovery of a peculiar pigment carrier for durably uniting the pigment to the underlying foundation. * * * The resinous part gave the necessary hardness and toughness and weatherproof qualities to the roofing, while the fatty part gave the flexibility and tended to prevent undue brittleness." The process is described in the first six claims of the patent and the product in the last two.

At the outset, it is clear that there is a marked distinction between a paint which only adheres and a facing interlocked by heat to the foundation. The proof, it seems to me, is convincing that the "Proslate roofing" of defendant is manufactured by applying a colored asphaltic paint cold to felt roofing. Mr. Thompson, an employé of complainant, testified to a conversation with Murphy, a night fireman, in the employ of defendant, in which the latter told him "that the coating covering was applied hot with the use of steam"; but this testimony is of no value as against that of Mr. Poore, defendant's superintendent, and in view of the subsequent visit of Mr. Abraham and complainant's counsel to the defendant's factory.

The general process of defendant was concisely described by Mr. Poore, as follows: "The foundation of this roofing is practically Patoid roofing, the only difference being a slightly coarser surfacing material. This base material is wound up in large rolls and transported from the building where it is made to the Proslate building, about 1,400 feet distant. There we apply a thin layer of paint to the surface of the roofing by means of a Waldron rotary painting machine. The paint is of ordinary consistency and could be applied by means of a brush, if this were considered good manufacturing practice. We spread the paint, however, more uniformly and in a thin layer, as we desire, by means of the painting machine. The painted material is then festooned on a rack similar to that used in wall paper factories, and the paint is allowed to dry by the evaporation of the solvent. This drying process takes usually about 15 hours, although with especially good ventilation the time has been somewhat shortened. When the paint has dried sufficiently, the roofing is then passed through a waxing machine, which applies a thin coat of wax to the underside of the roofing. The purpose of this wax is to prevent sticking of the roofing when wound up in rolls. The roofing is then rewound into small rolls, and after wrapping is ready for the market." Mr. Poore also stated that the paint was applied to the roofing at ordinary temperature and at the same consistency as one would use with an ordinary paint brush.

Complainant insists that the heat from the waxing was sufficient to cause some interlocking and to that extent is an infringement. Without analyzing in detail the technical and practical descriptions fully spread out in the record, I may say that I am satisfied that in defendant's process there is no interlocking, and that the treatment of the foundation is on a theory different from and inconsistent with complainant's process. Therefore defendant has not infringed.

Second Patent. The invention of this patent was mainly addressed to cheapening the product of the first patent and extending the range of usable carrier materials. The gist of this invention, as claimed by complainant, lay in the discovery that pitches and bitumens could be used for the carrier if brown in a thin layer, with the result that the color would not die out but, on the contrary, develop on exposure.

It is alleged that claims 4 (for process) and 9 and 11 (for product) are infringed by defendant. I agree with complainant that the absence of heat in defendant's process does not relieve of infringement under this patent. The controversy is thus narrowed down to the meaning of the claims as applied to the constituents of defendant's Proslate paint.

Defendant's formula is as follows:

| Proslate Paint. | Complete Paint. | Carrier or Binder. |
|---|---|---|
| Gilsonite | 21.1% | 52.7% |
| Kauri gum | 6.2 | 15.5 |
| Linseed oil | 12.3 | 31.0 |
| Manganese resinate | 0.3 | 0.8 |
| Red oxide | 12.8 | .... |
| Benzol 90% | 47.3 | .... |
|  | 100.0% | 100.0% |

In analyzing this formula, it must be remembered that the sole novelty of the claims of this patent sued on is that the carrier contains "a pitch or bitumen of a brownish color when viewed in a thin layer." It seems to me that the phraseology of the claims cannot be extended to comprehend the mixture of a pitch with something else, but means a pitch which in and of itself is of a brownish color when viewed in a thin layer. The illustration in the specification to produce, for instance, a yellow covering, is stearin pitch or its equivalent and linseed oil melted together and after that yellow ocher stirred in. Obviously stearin pitch or its equivalent (not stearin pitch and linseed oil) constitutes the pitch. Mr. Abraham's testimony showed that he experimented elaborately to get just the right kind of stearin pitch.

The definition of pitch advanced by the complainant unduly monopolizes a large field and is too comprehensive. If stearin pitch or its equivalent and linseed oil made a pitch as now contended, why did not the specification and the claims use some such expression as "stearin pitch and linseed oil together constituting a pitch," etc.? Of course, if the defendant uses a pitch of the character described, in a combination to which it adds an element, it cannot escape infringement unless relieved by the prior art.

We are thus led to the inquiry as to whether defendant's formula discloses the use of a pitch. Gilsonite was a well-known asphalt. Kauri gum is a chemical resin. Gilsonite is a dark material in a thin layer. Kauri gum is lighter when viewed in a thin layer than a brown pitch. Defendant, by mixing these ingredients with linseed oil, produces a paint binder light enough in color so that it immediately permits the roofing to assume the desired color and does not mask the color of the pigment.

If, however, Gilsonite alone is a pitch, then its use is met by the prior art. C. H. Parker Company, of Valparaiso, Ind., made colored asphalt paints comprised of Gilsonite, linseed oil, Venetian red, and the usual drier and solvent. Mr. Elliott, of the Elliott Varnish Company, of Chicago, testified to making, as far back as 1890, when in employ of Baker Wire Company, a deep maroon asphaltic paint composed of asphalt (usually Gilsonite) rosin and linseed oil, with the usual Venetian red and solvent. Later he began and has continued to make "Roofleak" of Gilsonite and linseed oil, with a drier, Venetian red, and solvent. The Armstrong Paint & Varnish Works made from 1899 a colored asphaltic paint of Gilsonite and vegetable oil, with Venetian red and the usual solvent.

It is evident, therefore, that if the claims in issue of this second patent were construed to cover the use on a roofing of a paint comprising Gilsonite and a pigment, they would not escape the prior art.

Third Patent. This patent has never been adjudicated. The alleged invention was, in some sense, a development of the invention of the second patent,

but related to paints adapted to be applied to the roofing foundations cold by means of a solvent.

The complainant outlines the essentials of the alleged invention in the following chart:

THIRD PATENT, 824,898.
(Liquid Cementing-Paint.)

VOLATILE SOLVENT
    PIGMENT
    BINDER
        containing or
        consisting of a

PITCH
    |WEATHERPROOF
    |PLASTIC
    |LIGHT-COLORED
    |NONGELATINIZING

Adapted for use on weatherproof flexible hydrocarbon roofings.

The six claims sued on are as follows:

"1. The hereindescribed process of manufacturing liquid cementing paint, which consists in dissolving in a volatile solvent, under the application of heat, a *weatherproof plastic pitch* of a color adapted to be dominated by that of an added pigment, allowing the solution to cool, and then adding a pigment which is relatively inert to the other ingredients.

"2. The herein described process of manufacturing liquid cementing paint, which consists in dissolving in a volatile solvent a *weatherproof and nongelatinizing plastic pitch* of a color adapted to be dominated by that of an added pigment and incorporating an inner (inert) pigment with the solution.

"3. The herein described process of manufacturing liquid cementing paint, which consists in incorporating or mixing with each other a volatile solvent, a *weatherproof plastic pitch* of a color adapted to be dominated by that of an added pigment, and a pigment which is relatively inert to the other ingredients.

"4. A liquid adapted for use as a paint, cement, or the like, the said liquid containing a volatile solvent, a *weatherproof and nongelatinizing plastic pitch*, and an inert pigment, the color of which dominates that of said pitch.

"5. A liquid adapted for use as a paint, cement, or the like, the said liquid containing a volatile solvent, a weatherproof plastic binder, which contains a *weatherproof pitch*, which appears light-colored and more or less pervious to light when viewed in a thin layer, and a pigment the color of which dominates that of said binder.

"6. A liquid adapted for use as a paint, cement, or the like, the said liquid containing, as a solvent, one of the lighter hydrocarbon distillates; as a binder, a *weatherproof pitch* which appears light-colored and more or less pervious to light when viewed in a thin layer; and, as a pigment, a metallic oxid the color of which dominates that of the pitch."

It will be noted that in each of these claims the reference is to a weatherproof plastic pitch and not to any weatherproof plastic binder. This patent, if as broad as contended for by complainant, is for the use of the pitch already made known by the second patent with a solvent to make it liquid. It may well be questioned whether patentable novelty has been disclosed, but that question may be left open, because here there is no infringement, for reasons which may be summarized as follows:

1. The claims (as above stated) refer to a weatherproof plastic pitch. This construction is clearly supported by the file wrapper.

2. The "improved paint" of the patent comprises three ingredients: First, a body or binder; second, a pigment; and, third, a more or less volatile solvent. These are ingredients common to all paints.

3. None of the ingredients used in defendant's carriers can be regarded as falling individually within the scope of the terms "pitch or bitumen," except possibly Gilsonite and B asphalt. Each of these (if they are pitches) is hard and brittle, and therefore not weatherproof or plastic. I think, also, that the B asphalt is black in thin layers, and that the Gilsonite is too dark to be used alone, and, if so used, would gelatinize.

This latter conclusion is supported, not only by the testimony adduced on behalf of defendant, but also, as it seems to me, by the testimony of Mr. Abraham.

Briefly, in conclusion, if the claims of the third patent must be limited in their construction to comprehending a weatherproof plastic pitch, instead of a weatherproof plastic binder (as I think they must be), then the paint and cement of defendant do not infringe.

For the reasons outlined, the bills are dismissed, with costs.

A. D. Kenyon, of New York City, for appellant.

W. K. Richardson, of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The first and second patents, in a suit for infringement by complainant here against a different defendant, also named Bird, came before Judge Ray. His opinion will be found in 175 Fed. 346. Upon that opinion this court affirmed decree against defendant, without itself writing anything. Judge Ray's opinion is a very full one, discussing at length the prior art and the novelty and utility of the invention disclosed, with copious excerpts from specifications and claims. So complete an understanding of the questions therein discussed will be found on reference to that opinion that further discussion of the point therein decided is not necessary here.

The leading object of these two patents was to produce flexible weatherproof roofings in colors other than black: the flexible waterproof and weatherproof roofings of the prior art were black, or of a brownish black, unless painted. There is a foundation of felt, heavy paper, or what not, which is saturated or coated with a waterproof compound containing hydrocarbon material. Upon this foundation there is spread a facing which, with other ingredients, contains the desired pigment. In the prior art this facing was applied by painting it on the foundation, so that it became an adherent coating, as would ordinary paint when spread over the surface of wood. There were defects and difficulties attendant on this old method of coating, which are pointed out in opinion above referred to. The patentees overcame these defects and difficulties, and their process and product was held to be novel and meritorious.

This was done, to quote from the specifications, "by combining with the foundation a carrier or binder and a pigment so constituted and applied that they not only are thoroughly united with the foundation, so as to prevent cracking and peeling off, but, further, all injurious interaction between the constituents of the foundation and those of the pigment and its carrier is avoided." The foundation is first prepared by saturating the felt with one of the many suitable waterproofing compounds then on the market. The pigment carrier or binder—the facing of the completed roofing—is next prepared. Careful instructions as to its composition are given, so as to insure its coacting with the saturated foundation.

"Then the colored facing * * * is applied in the presence of heat to the foundation, which preferably should be in a heated condition, so that the * * * hydrocarbon mixture may be in a soft or molten state. When ready-made fabrics are used for the foundation, they may first be heated to bring the saturating * * * compound into a plastic state. In many cases the

temperature of the colored facing is sufficiently high to soften the foundation."

The novelty of the patented process, as contrasted with the prior art of coating the foundation with a paint, is pointed out:

"It will be observed that the hydrocarbon material of the foundation and the colored facing are brought together while both are in a molten or plastic condition and that they are subjected to pressure while in such condition. This causes the foundation and the facing to interlock or amalgamate at their junction. Thus the finished article comprises three portions, one of which is formed by the facing exclusively, another by the foundation exclusively, and the third intermediate portion by an interlocking of the two first named."

The invention is very clearly expressed in the third claim of the first patent. We quote that one, as it is the shortest:

"The herein-described process of manufacturing a flexible material, which consists in treating a suitable material with a hydrocarbon to form a foundation, and applying to the said foundation in the presence of heat, a colored facing consisting of a pigment and a mixture containing a resinous body and a fatty body."

The second patent was, as Judge Ray held, a carrying forward, extension, and perfection of the first patent. It gives further instructions as to the composition of the facing. Of the three claims in suit here 4, 9, and 11, we need only quote:

"4. The herein-described process of producing weatherproof coverings, which consists in applying to a suitable foundation a facing containing a bitumen or pitch exhibiting a brownish color when viewed in a thin layer, said facing also containing a pigment adapted to become clearly visible or to develop upon exposure to the atmosphere."

That the defendant's covering in the suit in 175 Fed. 346, was an infringement of both these patents is not questioned by the defendant here. The covering now before us is prepared by coating the foundation with the pigment carrier by a painting process, in the absence of heat, which was the old way of making such coverings, coating the foundation with the facing instead of interlocking the two.

Complainant contends that the absence of heat in defendant's process does not take it out of the field of this second patent. It is pointed out that the claims do not contain the words "in the presence of heat," or their equivalent (as did those of the first patent), and that the instructions in the second patent as to the process of making the weatherproof covering, which include heat, are prefaced with the words: "We will now describe in detail one particular way of making our approved covering." Judge Mayer agreed with this contention, but we do not find it persuasive. There is nothing to show that the *interlocked* facing—the novel idea which differentiated patentee's invention from the mere adherent coating of the prior art, which was full of painted adherent coatings—was cast aside in the second patent. It was on this theory of novel method of securing a durable interlocking that the patents were originally sustained. No method other than heat to effect interlocking and durable attachment is described or suggested in the second patent. It is true that the patentee says that his pigment carrier

is "applied to the fabric in any approved manner"; but the testimony seems to indicate that unless heat is used in its application the interlocking or durable attachment will not result, that if it were applied in the old way, the only way in use before the applications for these patents, viz., painting it on cold, the desired result would not be obtained. It is suggestive that in manufacturing its products under these two patents the complainant invariably uses heat. Maybe a durable attachment effected in some other way would effect the desired result, but apparently a further exercise of inventive faculty is required to discover such third method as a substitute for hot application under pressure or cold painting. The patentee testified that he could "conceive of a method by which the mixture could be applied cold; in fact, several methods," although he suggested only one method. He said that he "believed it was at least feasible" to comminute the pigment carrier mixture and then apply the particles under suitable pressure and without heat, so as to cause them to recombine and to attach themselves to the foundation. He had never tried this and did not know how practical it would be, although he did not think it would be as durable as though the interlocking actually took place. This, then, seems to be the situation. There are only two known methods of applying the facing—by cold painting or by heat. If the facing of the second patent is applied in the presence of heat, as taught by the first patent, the result will be satisfactory; if applied as a cold paint, the result will not be satisfactory. There may be some third method of applying it, which will also give satisfactory results, but no one has yet by experiment demonstrated its existence. Under these circumstances, to construe these claims as covering every method of durably attaching, known or unknown, at the date of the issue of the patent, would make them like the claim which was condemned by this court in Matheson v. Campbell, 78 Fed. 910, 24 C. C. A. 384, where we said:

"The patentee proposes to set himself in the pathway of future experimenters, * * * and, as the result of each new experiment is disclosed, will fire away at it, calculating to 'hit if it is a deer and miss if it is a cow.'"

Judge Mayer, however, held that the combination of materials used in defendant's facing did not infringe the combination of materials covered by the claims of the second patent. With his reasoning and conclusion on that branch of the case we concur.

[2] The third patent departs from the heat-interlocking feature altogether. Its facing is applied cold as a paint would be either with rollers or a brush or in any other similar way known to the art. The claims relied on are:

"3. The herein-described process of manufacturing liquid cementing paint, which consists in incorporating or mixing with each other, a volatile solvent, a weatherproof plastic pitch of a color adapted to be dominated by that of an added pigment, and a pigment which is relatively inert to the other ingredients."

"5. A liquid adapted for use as a paint, cement or the like, the said liquid containing a volatile solvent, a weatherproof plastic binder which contains a weatherproof pitch which appears light-colored and more or less pervious to light when viewed in a thin layer, and a pigment the color of which dominates that of said binder."

As originally filed, the third claim, instead of the words "a weather-proof plastic pitch," used the words "a weatherproof plastic binder"; and the fifth claim, instead of stating that the binder "contains a weatherproof pitch," stated that it "contains a pitch." Similar changes were made in the other four original claims. These amendments were made because of rejections on prior art, the patentee in the course of discussion with the Patent Office pointing out that three pitches referred in the prior art, viz., coal tar pitch, wool pitch, and rosin pitch, are "all deficient in that they are not weatherproof." We concur with Judge Mayer in the conclusion that to infringe these claims whatever pitch there may be in the binder (the pigment carrier or coating) must itself be weatherproof. Since the Gilsonite pitch which defendant uses is not itself weatherproof, as the testimony clearly shows, we concur in the conclusion that infringement of the third patent is not shown.

Decrees affirmed, with costs.